CHICAGO—FIRST DISTRICT—MAY, 1916.    347

Adkins, Young & Allen Co. v. Rhinelander P. Co., 199 Ill. App. 347.

## Adkins, Young & Allen Company, Appellee, v. Rhinelander Paper Company, Appellant.

### Gen. No. 21,940.    (Not to be reported in full.)

Appeal from the Municipal Court of Chicago; the Hon. JOHN STELK, Judge, presiding. Heard in this court at the October term, 1915. Reversed and judgment here. Opinion filed May 1, 1916. Rehearing denied May 15, 1916. *Certiorari* denied by Supreme Court (making opinion final).

### Statement of the Case.

Action by Adkins, Young & Allen Company, a corporation, plaintiff, against Rhinelander Paper Company, a corporation, defendant, to recover a balance said to be due for installing in defendant's manufacturing plant what are called "Fuel Economy Gauges." Defendants in its affidavit of defense alleged failure of plaintiff to perform its contract; it also filed a claim of set-off. Upon trial by the court defendant was defeated as to its set-off, and plaintiff had judgment for $2,000, from which defendant appeals.

The evidence showed that letters contained the contract of the parties. On September 22, 1913, plaintiff wrote to defendant offering to equip one of its boilers, No. 6, with "Indicating and Recording Gauges," with a guaranty that they would increase "the efficiency of evaporation at least five (5%) per cent.," to be determined by tests. If the increase was not shown the device was to be removed free of charge. This offer was accepted. On January 3, 1914, plaintiff wrote as follows:

"As per our contract of September 22nd, 1913, and your letter of the 30th ult., we take pleasure in submitting this contract that covers every detail of both our written and verbal agreements."

Then follows a proposition to equip each of defendant's five other boilers with the "Wilsey Fuel Economy Gauges," under the following conditions:

348    APPELLATE COURTS OF ILLINOIS.

Adkins, Young & Allen Co. v. Rhinelander P. Co., 199 Ill. App. 347.

"We guarantee to increase the efficiency of steam production at least five (5) per cent. over present figures.

"This savings guarantee to be determined by two (2) evaporative tests each of one (1) week duration. One test under present conditions and the second test with the fireman taking advantage of our gauge readings. It is understood you will have one of your men check these figures at all readings and verify them to you.

"In the event of test not being satisfactory to either party, duplicate tests are to be conducted.

"If, according to these tests, give (5) per cent. or more increase in the evaporation per fuel unit is shown, the complete installation is to be paid for within thirty (30) days of installation.

"If less than five (5) per cent. increase in efficiency is shown, the equipment is to be removed free of charge to you.

"These efficiency tests are to be as stated, each of one (1) weeks duration, i. e., six (6) consecutive working days each.    *    *    *

"Price of complete installation as above outlined and subject to above guarantees, including our services as efficiency engineers, to be two thousand ($2,000) dollars.

"The installation on No. 6 boiler to be paid for as per previous contract if these tests are completed as outlined and show 5% or more."

This, also, was accepted by notation on the letter.

The gauges having been installed, the tests contemplated were made, commencing February 16th and ending February 28th. At the conclusion of the tests it was reported by plaintiff's representative to the defendant that these tests showed an "increase in evaporation or efficiency of 17.24%." Defendant's manager expressed doubt as to the accuracy of these figures, saying that he wanted to run another test the following week. This conversation took place on Saturday. The manager said he knew there was something wrong with this test, and he wished to confirm it. Mr.

Adkins of the plaintiff company asked for a payment on account, and represented that they had been at considerable expense and that there was no question of making the saving of five per cent., and that they would like to have a little advance. Thereupon plaintiff was paid $425. At the same time plaintiff's representative was again told that defendant's manager was sure these figures were not correct and that he would make another test the following week. This was agreed to by plaintiff. This second test was made, and two days thereafter, that is on March 18th, defendant reported to plaintiff that this test "indicated a saving of 1.91%." Letters passed between the parties in which plaintiff argued that this second test showed the saving guarantied, which claim was combated by defendant. On April 14th, defendant wrote to plaintiff as follows:

"Your favor of the 9th received and we do not agree with you that there has been an average saving of $10\frac{1}{2}\%$ in our boiler room since installing your Economy Gauges.

"As advised you when here, the first test without the gauges was not a practical one in any way as it showed the highest cost of fuel of any run ever made in the history of our mill. It was for this reason that I took advantage of our contract for a second test.

"Up to the present time we are not satisfied with the results shown since the last test showed a saving of less than 5% and we might have had this difference in firing from one week to another without any gauges attached.

"Please note, therefore, that we do not accept the apparatus."

There was a disagreement between the parties as to the consumption of wood fuel in the respective tests, defendant claiming that in the first test this consumption was disregarded, and plaintiff claiming that this factor was of no importance. In June and July defendant had tests made as to the fuel value of wood

such as was used in its mill, but the court refused to allow the result of these tests to be shown.

MEYER SHAPIRO, for appellant; GREGORY & McNAB and ALBERT S. LONG, of counsel.

BRYAN, McCORMICK & WILBER, for appellee; WILLIAM E. BRYAN, of counsel.

MR. PRESIDING JUSTICE McSURELY delivered the opinion of the court.

## Abstract of the Decision.

1.  CONTRACTS, § 330*—*when payment on account not a waiver of conditions of contract*. In an action to recover a balance claimed to be due for installing a device in defendant's plant, evidence examined and *held* to show that a payment of a part of the purchase price did not constitute a waiver by defendant of the conditions and guaranties of the contract and an acceptance of the device.

2.  CONTRACTS, § 374*—*when burden of proving compliance on plaintiff*. In an action to recover a balance claimed to be due under a contract for the purchase of a device, where defendant sets up a failure of the device to fulfil the conditions and guaranties of the contract, the burden is on plaintiff to show that the device conformed to such guaranties.

3.  SET-OFF AND RECOUPMENT, § 18*—*when amount paid on account recoverable*. Were a buyer has paid a part of the purchase price upon a condition to be subsequently performed which thereafter fails, he is entitled to recover such amount on a plea of set-off in an action to recover the balance of the purchase price.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.